

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PROFESSIONAL MASSAGE TRAINING CENTER, INC.,<br><br>                                    Plaintiff,<br><br>           -v-<br><br>ACCREDITATION ALLIANCE OF CAREER SCHOOLS AND COLLEGES,<br><br>                                    Defendant. | Civil Action No. 1-12-CV-911 |

## ORDER

### I. Introduction

The Professional Massage Training Center ("PMTC"), a school for massage therapists, has had its accreditation revoked by the Accreditation Alliance of Career Schools and Colleges d/b/a Accrediting Commission of Career Schools and Colleges ("ACCSC"). PMTC has sued ACCSC to reverse the revocation, and now seeks a preliminary injunction restoring its accreditation so that it may continue to operate pending the outcome of this case.

Before the Court is the Plaintiff's Motion for Preliminary Injunction (Dkt. No. 15), filed August 16, 2012. The Defendant filed its Opposition on September 7, 2012 (Dkt. No. 45), and the Plaintiff filed a Reply on September 11, 2012 (Dkt. No. 46). The Court heard arguments on the matter on September 13, 2012, and now issues this Order.

### II. Facts

The Defendant, ACCSC, has been recognized by the U.S. Department of

Education as an accreditation agency since 1967. ACCSC currently accredits 776 institutions, nearly half of which offer degrees at the associate level or above (Def. Opp. 3).

The Plaintiff, PMTC, has been operating a school for aspiring massage therapists in Springfield, Missouri under the direction of Juliet Mee since 1994. PMTC gained accreditation from ACCSC in 2000, and ACCSC renewed its accreditation in 2006. The PMTC is a massage therapist school of good reputation. Graduates of the PMTC graduate at a higher rate and enjoy better job placement rates than the average school accredited by ACCSC (Comp. 11).

In January 2010, ACCSC issued a Show Cause Order, requesting that PMTC provide documentation of its compliance with ACCSC's financial requirements for accreditation. This began a two and a half year series of interactions between PMTC and ACCSC that included site visits, meetings at ACCSC, extensive exchange of documents, and PMTC being placed on probation twice. The process culminated in ACCSC terminating PMTC's accreditation on March 7, 2012 (Comp. 61). PMTC made an administrative appeal and was denied on July 11, 2012 (Comp. 64). PMTC is now claiming that the ACCSC decision denied them their statutorily granted due process and should be overturned.

### III. Standard

A preliminary injunction is an extraordinary remedy, and may only be awarded if the moving party can make a clear showing of four factors: (1) the movant is likely to succeed on the merits at trial; (2) the movant is likely to be irreparably harmed absent preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) granting an injunction would be in the public interest. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (cert. granted, judgment vacated on other grounds, 130 S. Ct. 2371, 176 L. Ed. 2d 764

(U.S. 2010)); *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010) (reaffirming the preliminary injunction standard announced in 575 F.3d 342).

## IV. Discussion

In considering PMTC's Motion, the Court assesses whether PMTC has made a clear showing that it satisfies each of the four requirements for preliminary relief.

### *a. Likelihood of Success on the Merits*

PMTC claims that it was entitled to due process pursuant to 34 C.F.R. § 602.25 throughout ACCSC's decision to terminate accreditation, and that ACCSC denied it that due process (*see* Comp. 84-105).

In an action challenging an accreditation agency's revocation of accreditation, courts owe "great deference" to the agency's decision. *See, e.g., Wilfred Acad. of Hair and Beauty Culture v. S. Ass'n of Coll. and Schools*, 957 F.2d 210, 214 (5th Cir. 1992) (citing *Medical Inst. Of Minnesota*, 817 F.2d 1310, 1314 (8th Cir. 1987)); *St. Andrews Presbyterian Coll. v. S. Ass'n of Coll. & School*, 2007 WL 4219402, at *3 (M.D.N.C. Nov. 29, 2007). This is because "[t]he standards of accreditation are not guides for the layman but for professionals in the field of education." *Parsons College v. North Central Ass'n of Colleges and Secondary Schools*, 271 F. Supp. 65, 73 (N.D. Ill. 1967). In light of the deference due, "[f]ederal courts have consistently limited their review of decisions of accrediting associations to whether the decisions were arbitrary and unreasonable . . . ." *Wilfred Acad.*, 957 F.2d at 214 (internal quotes and citations omitted).

Although "arbitrary and unreasonable" is a high bar, PMTC has clearly demonstrated a likelihood of success on the merits. Most convincing is ACCSC's decision to accredit PMTC in

2000, and its decision to renew the accreditation in 2006. They apparently did not have concerns about the adequacy of school's management at that time. PMTC was under the direction of Juliet Mee throughout that period, and remains so today. If there has been relatively high turnover at the management level below Ms. Mee as ACCSC claims, it has not had a negative impact on the graduation or placement rates of PMTC's students. Similarly, the Learning Resource System ("LRS"), which was identified as an issue by ACCSC, has only been expanded and improved since the last accreditation in 2006. Indeed, a survey of students conducted in 2011 by ACCSC's own site visit team indicated that 92% of students found the LRS to be accessible and useful (Comp. 55). The same reasoning holds for the experience and background of PMTC faculty: what was apparently sufficient in 2000 and 2006 has now been deemed unacceptable in 2012.

In addition to the Court's concerns about the basis of the initial decision in this case, testimony at the hearing on September 13, 2012 highlighted potential issues with the integrity of the appeals process. PMTC has demonstrated, through its cross examination of Dr. McComis, head of ACCSC, a likelihood it will be able to prove at trial that the appeals panel did not consider the entire record in denying the appeal, and also that the appeals panel may have suffered from a conflict of interest.

The record does not demonstrate that ACCSC had a rational basis for reversing its earlier decisions to accredit PMTC. The Court finds that PMTC has more than just a colorable claim; PMTC has demonstrated a likelihood it will ultimately show that ACCSC acted arbitrarily and unreasonably in revoking its accreditation.

### b. Irreparable Harm

There is little debate that PMTC stands to suffer irreparable harm in the absence of preliminary relief. Ms. Mee swore by affidavit that over 90% of PMTC students receive Title IV student loans, and they are no longer eligible for aid if the school loses accreditation (Pl. Mot. Ex. H, ¶ n7). Ms. Mee further swore that if students lose Title IV funding, PMTC will quickly go out of business (*Id.*). Ms. Mee testified to the same facts at the hearing, and estimated that PMTC could remain a going concern for approximately two more weeks without an injunction restoring its accreditation. Her testimony was reasonable and appeared well grounded in fact.

In addition, it is obvious that losing accreditation would cause PMTC to lose customers to competitors and also cause them a loss of goodwill. These things are considered irreparable harm in the Fourth Circuit. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994).

The Court finds that PMTC stands to suffer irreparable harm if it is not granted preliminary relief.

### c. Balance of Equities

It appears that PMTC has much to lose if it does not regain accreditation. Even if their claims to be on the brink of insolvency are exaggerated, certainly their business will be negatively affected if it does not regain accreditation. It would be patently unfair for them to endure that sort of damage—from which recovery would be difficult, if not impossible—if it were ultimately determined that the revocation was improper. On the other hand, there is no

apparent unfairness to ACCSC in granting the injunction except a delay in its ability to fulfill its obligations as an accrediting agency.

The Court finds that the balance of equities tips in favor of PMTC.

### d. The Public Interest

The public has a very real interest in the integrity of the procedures in place for accrediting schools like PMTC. This interest is reflected in the powers the Department of Education bestows on entities like ACCS, and in the deference afforded them by the courts. The public also has an interest in protecting prospective students of PMTC who might begin an education there while an injunction is in effect, only to later find that their chosen school has lost accreditation (should PMTC lose on the underlying action).

On the other hand, the public has an interest in keeping schools like PMTC in operation. The school teaches students skills that enable them to find gainful and productive employment, and PMTC's graduates apparently go on to find employment with a greater degree of success than graduates of other schools accredited by the ACCSC. When students are able to finance their education with Title IV funding, the value of the school is amplified because people who could not otherwise afford an education are able to access the benefits that PMTC offers. So even if PMTC could continue to operate without accreditation (which does not appear to be the case), there is still a preference for allowing their students to access Title IV funding.

The public also has an interest in protecting the jobs that PMTC offers to its faculty and staff, the assistance that PMTC offers to its alumni, and the revenue that PMTC brings to other businesses in its neighborhood via the patronage of PMTC students (*see generally* Pl. Mot. Ex. A).

Finally, the public has an interest in protecting the investment the government has made

in students currently enrolled at PMTC. Students who have already secured Title IV funding but have not yet completed their course of study would likely see their prospects for employment drop if PMTC lost accreditation. Those same students' likelihood of successfully paying back their loans would drop alongside their chances of finding a job.

Based on the above, the Court finds that it would be in the public interest to allow PMTC to continue operating while the underlying case is resolved.

## V. Conclusion

Because the Court finds that PMTC has demonstrated a likelihood of success on the merits, stands to suffer irreparable harm if preliminary relief is denied, and enjoys the favor of the equities and the public interest, the Court finds PMTC is entitled to injunctive relief pending resolution of its case against ACCSC.

Based on the foregoing it is **ORDERED:**

1) Defendant shall withdraw all orders it has issued revoking the Plaintiff's accreditation;

2) Defendant shall reinstate Plaintiff's accreditation;

3) Defendant shall refrain from taking further action against the Plaintiff during the pendency of this action;

4) Plaintiff shall advise all current students of PMTC, as well as all prospective students considering enrolling PMTC with whom the school communicates, that PMTC's accreditation is under review and may ultimately be revoked.

September 17, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge