**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

– Alexandria Division –

| | | |
|---|---|---|
| **PROFESSIONAL MASSAGE** | ) | |
| **TRAINING CENTER, INC.** | ) | |
| | ) | Case No. 1:12-cv-00911-LO-IDD |
| versus | ) | |
| | ) | |
| **ACCREDITATION ALLIANCE OF** | ) | |
| **CAREER SCHOOLS AND COLLEGES** | ) | |

# DEFENDANT ACCSC'S
# MEMORANDUM IN SUPPORT OF ITS MOTION FOR
# SUMMARY JUDGMENT

James S. Kurz (VSB #16610)
**REDMON PEYTON & BRASWELL  LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph:  (703) 684-2000 ext. 12
JKurz@RPB-law.com

Robert J. Martinez (*pro hac vice*)
**WILLIAMS & JENSEN PLLC**
701 8th St., N.W., Fifth Floor
Washington, DC  20001
Ph:  (202) 659-8201
JRJMartinez@wms-jen.com

Daniel D. Mauler (VSB #73190)
**REDMON PEYTON & BRASWELL  LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph:  (703) 684-2000 ext. 16
DMauler@RPB-law.com

Rebecca C. Larson (VSB #81455)
**REDMON PEYTON & BRASWELL LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph: (703) 684-2000 ext. 34
Rebecca.Larson@RPB-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISRICT OF VIRGINIA**

- Alexandria Division –

| | | |
|---|---|---|
| PROFESSIONAL MASSAGE | ) | |
| TRAINING CENTER, INC., | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 1:12-cv-00911-LO-IDD** |
| v. | ) | |
| | ) | |
| ACCREDITATION ALLIANCE OF | ) | |
| CAREER SCHOOLS AND COLLEGES, | ) | |
| Defendant. | ) | |

## Table of Contents

I.     INTRODUCTION TO ACCSC'S ARGUMENT ...........................................................................1

II.     SUMMARY OF ACCSC's ARGUMENT ...............................................................................1

  A.   The ACCSC Commission's Decision is entitled to "Great Deference."........................................1

  B.   The "Substantial Evidence" Supporting the Commission's Decision...........................................4

III.     MATERIAL FACTS NOT GENUINELY DISPUTED.......................................................................9

  A.   ACCSC: A Recognized National Accrediting Agency .........................................................9

  B.   Professional Massage's Failure to Demonstrate Adequate Management, Administrative Capacity, and Reasonable Retention of Administrative Staff. ...........................................................10

    1)   Title IV Eligibility and Compliance..............................................................................10

    2)   Professional Massage Cited for Financial Responsibility Failures by the U.S. Department of Education. ...............................................................................................................11

    3)   Financial Troubles and Erratic Management Plagued Professional Massage.................................11

    4)   Professional Massage's Staff/Faculty "Revolving Door".................................................13

  C.   ACCSC's *Standards of Accreditation* .........................................................................16

    1)   Accreditation Process: First Cycle: Visit-Team Report-Response .................................................18

    2)   The First Probation Order, a "Plea for Help," and the School's Response to the Order...............20

    3)   The Commission Vacates Probation Order and Directs Second Site Visit....................................21

    4)   Accreditation Process:  Second Cycle: Visit-Report-Response.....................................................21

  D.   The San Diego Meeting: The Commission's 12-0 Vote, the March 7, 2012 Denial Letter and the Subsequent PMTC Appeal, Hearing and Appeal Denial.............................................................24

1) The Commission's 12-0 Vote to Deny Professional Massage's Application for Renewal of Accreditation..........................................................................................................................24

2) March 7, 2012 Denial Letter: Commission Action Reported ......................................25

3) An Independent Appeals Panel Denied PMTC's Appeal ............................................26

E.  **Michael Ackerman and the 1st Site Visit** ......................................................................27

F.  **Commissioners Make Decisions: No Commissioner Bias or Prejudice.** ....................28

G.  **ACCSC Staff Role; Communications Regarding Professional Massage** ....................29

IV.  **LEGAL ARGUMENT** ..............................................................................................................30

A.  **The Count 1 Substantive Claims Fail.** ............................................................................30

1) "Substantial Evidence" Supports the ACCSC Commission's Decision. .....................30

2) Professional Massage Never Sought a Waiver of the Requirement to Demonstrate Stability in Management and Finances..........................................................................................33

3) The Claim Alleging that the ACCSC Staff Improperly Influenced the Commissioners' Vote is Shredded by the Evidence..........................................................................................34

B.  **The Count 1 Procedure Claims Fail** ................................................................................36

1) Professional Massage Misreads the Department of Education Time-Limit Regulation ...............37

2) Professional Massage Failed to Comply with ACCSC's Procedural Requirements Regarding the Submission of the "Two Binders." .........................................................................38

C.  **The "Ackerman Claims" Fail.** .........................................................................................39

D.  **The Tortious Interference Claims Fail because Professional Massage Cannot Prove "Improper Means" by ACCSC.** ...............................................................................................................41

V.  **CONCLUSION** ........................................................................................................................43

## I.      INTRODUCTION TO ACCSC'S ARGUMENT

Defendant Accreditation Alliance of Career Schools and Colleges ("ACCSC") moves for Summary Judgment pursuant to Fed. R. Civ. P. 56.[1]  There are no genuine issues of dispute as to the material facts in this case.  Therefore, the Court should grant summary judgment to ACCSC on all six counts of the First Amended Complaint.

The standard of review that the Court will apply in this case is key: whether the decision of the ACCSC Commission was arbitrary and capricious.  In that way, this case is similar to a court's review of a federal agency decision.  Plaintiff Professional Massage Training Center, Inc. ("Professional Massage," "PMTC," or simply the "school") has the heavy burden to establish that the ACCSC Commission's decision was arbitrary and capricious.

This Memorandum will set forth the undisputed material facts that demonstrate that the decision of the ACCSC Commission was not arbitrary or capricious.  These facts are sufficient to justify the conclusion–as a matter of law–that the Commission's decision was within the bounds of acceptable reason.  For this reason and as argued below, ACCSC is entitled to summary judgment on all counts of the Plaintiff's Amended Complaint.

## II.      SUMMARY OF ACCSC's ARGUMENT

### A.  The ACCSC Commission's Decision is entitled to "Great Deference."

The standard of review in this case requires "great deference" to the decision by the ACCSC Commission to terminate Professional Massage's accreditation.  This Court itself identified that standard in its Preliminary Injunction Order:

> In an action challenging an accreditation agency's revocation of accreditation, courts owe "great deference" to the agency's decision. *See, e.g., Wilfred Acad. of Hair and*

---

[1]   By Order of April 10, 2013, the Court granted ACCSC leave of 43 pages of text for this Memorandum. The final two pages contain counsel signatures and a Certificate of Service.

*Beauty Culture v. S. Ass 'n of Coll. and Schools,* 957 F.2d 210, 214 (5th Cir. 1992) (citing *Medical Inst. Of Minnesota,* 817 F.2d 1310, 1314 (8th Cir. 1987)); *St. Andrews Presbyterian Coll. v. S. Ass 'n of Coll. & School,* 2007 WL 4219402, at *3 (M.D.N.C. Nov. 29, 2007). This is because "[t]he standards of accreditation are not guides for the layman but for professionals in the field of education." *Parsons College v. North Central Ass'n of Colleges and Secondary Schools,* 271 F. Supp. 65, 73 (N.D. Ill. 1967).

Ex. # 5. This Court continued, "[i]n light of the deference due, [f]ederal courts have consistently limited their review of decisions of accrediting associations to whether the decisions were arbitrary and unreasonable." *Id*. (*citing Wilfred Acad.,* 957 F.2d at 214).

This Court's understanding of the "great deference" owed to ACCSC's decision is consistent with decisions of other courts around the country. "There is probably no area of the law where deference is as necessary [as] it is when a court reviews the decision of an accreditation association." *Found. for Interior Design Educ. Research v. Savannah Col. of Art & Design*, 39 F. Supp.2d 889, 894 (W.D. Mich. 1998) (*quoting Transport Careers, Inc. v. Nat'l Home Study Council*, 646 F.Supp. 1474, 1482 (N.D. Ind. 1986)). Looking to reviews of governmental agency decisions under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"), the Sixth Circuit determined that the review of an accreditation agency decision is *more limited* and *deferential* than under the APA:

> [S]tandards of accreditation are not guides for the layman but for professionals in the field of education, great deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the ABA followed a fair procedure in reaching its conclusion. We are not free to conduct a *de novo* review or substitute our judgment for that of the ABA or its Council.

*Thomas M. Cooley Law School v. Am. Bar Ass'n*, 459 F.3d 705, 712-13 (6th Cir. 2006).

The Sixth Circuit's standard is simple: "This court reviews only whether the decision of an accrediting agency such as the ABA is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Id.* at 712.

**ACCSC'S Summary Judgment Memorandum – Page 2 of 45**

Professional Massage has asserted various common law tort and contract claims that arise out of ACCSC's denial of accreditation.  *See* Amended Complaint, Counts 2-6.  The Sixth Circuit has held that such claims should be reviewed as an accreditation decision and not as common law claims:

> We agree with the district court that these [common law] claims arise from the Foundation's decision to deny the College's accreditation application.  We therefore review the Foundation's decision as an accreditation decision, not as a contract, fiduciary duty, fraud or other common law claim . . . We have found *supra* that the Foundation did not act in an arbitrary or unreasonable manner in denying the College's accreditation application and that its decision was based on substantial evidence.  The College can not prevail on its common law claims as a matter of law.

*Found. for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 532-33 (6th Cir. 2001).  *See also Chicago School of Auto. Transmissions, Inc. v. Accreditation Alliance of Career Schools & Colleges*, 44 F.3d 447, 449 (7th Cir. 1994) ("[A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches.").

Professional Massage carries a heavy burden in this case, heavier even than in a challenge to a governmental agency decision under the APA.  This is demonstrated in *Thomas M. Cooley Law School*, a remarkably similar case where the Sixth Circuit affirmed a grant of summary judgment to an accreditation agency that denied accreditation to a troubled school with a history of noncompliance issues.  To survive summary judgment, Professional Massage must make a showing that there was no "substantial evidence" to support the ACCSC Commission's decision.  This Professional Massage simply cannot do.  As is set forth in this Memorandum, there is ample evidence to support the decision to revoke Professional Massage's accreditation.

Unable to meet its heavy burden, Professional Massage will likely attempt to argue that procedural errors and supposed "bias" by ACCSC staff members (but *not* Commissioners) destroys any confidence in the Commission's decision.  But this argument fails for two reasons.

**ACCSC'S Summary Judgment Memorandum – Page 3 of 45**

First, the mere existence of procedural errors that do not bear on the ultimate decision are not sufficient to overturn an accreditation decision.  As the Sixth Circuit has already noted, "[A] mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination.  In light of the undisputed evidence of substantial and persistent noncompliance, [the school] cannot show that it would not have been sanctioned had these alleged errors not occurred."  *Thomas M. Cooley Law School*, 459 F.3d at 716 (quotation marks omitted).

Second, Professional Massage will likely point to a handful of e-mails from ACCSC staff members as evidence of so-called "bias".  These e-mails, however, are mundane and innocuous, as the Court will readily see when it reads the actual e-mails.  Moreover, Professional Massage has no evidence to offer that any of these so-called "bias" e-mails were ever seen by any Commissioner.

Because Professional Massage faces substantial evidence supporting to the Commission's decision, the Amended Complaint cannot survive summary judgment.

### B.  The "Substantial Evidence" Supporting the Commission's Decision.

The "substantial evidence" supporting the Commission's decision to terminate Professional Massage's accreditation will be described in detail below in this Memorandum, but can be categorized into four core areas:

(1) ACCSC's regular process was properly followed in considering of Professional Massage's Application for Renewal for Accreditation, including the Commissioners' 12-0 vote denying the Application;

(2) Professional Massage's tribulations with the U.S Department of Education and the school's continuing financial crises;

(3) The "revolving door" among management employees at Professional Massage, best illustrated by Juliet Mee's hiring and firing of Rebecca Cox and April Durnell; and,

(4) Professional Massage's failure to demonstrate the qualifications of its new Management Team following the Cox/Durnell episode.

FIGURE No. 1 (attached also as Ex. #67) below shows part of the "revolving door" at Professional Massage.  This focuses on the April Durnell and Rebecca Cox episode along with Juliet Mee's hiring and firing of prior school administrators, and a memorable meeting in June 2010 when Ms. Mee fired everyone (including herself) – *literally*.   FIGURE No. 1 presents a

**FIGURE No. 1**



slice of the facts that the Commissioners relied upon when they determined that Professional Massage had failed to demonstrate compliance with the mandatory accreditation criteria for management and administrative capacity.  The mandatory criteria requires Professional Massage to demonstrate that "[t]he continuity of management and administrative capacity is ensured through the reasonable retention of management and administrative staff." Ex. #2 (*Standards*) at 64 (Ch. 2, Sec. I(A)(4)).   A school that lacks adequate management and administrative staff

retention "cannot provide assurance that it will operate in compliance with accrediting standards, meet its objectives, and fulfill its obligations to students." *Id.*

When the Commission considered Professional Massage's accreditation at its February 2012 meeting in San Diego, the school's management team included Juliet Mee, whose past record indicated instability in management skills, plus two newly appointed but plainly unqualified individuals in senior management positions.  One of these new individuals, Jeremy Beatty, was the school's former Corporate Services manager.  His new position was that of Compliance Administrator, a position requiring at least three years of similar experience.  As the Commission found during its review in February 2012, Mr. Beatty's qualifications stated in his resume fell short of the minimum requirements for the position–minimum requirements developed by Professional Massage itself.  Similarly, the new Curriculum Administrator, had no significant experience managing curriculum.  *See* Ex. #21 (PMTC Response to December 2011 Probation Order); Ex. #23 (March 2012 Commission Revocation Letter).

 Prior to losing its accreditation, Professional Massage went through a *two-year* evaluation process starting in January 2010 that provided multiple opportunities to demonstrate compliance with remedial guidance from ACCSC.  FIGURE No. 5, below at page 18, illustrates this lengthy, time-consuming process.

By the Commission's February 2012 San Diego meetings, Professional Massage simply could not overcome its internal management and financial problems.  The ACCSC Commission voted 12-0 to deny Professional Massage's Application.

Professional Massage exercised its right to an appeal of the Commission's denial.  But the result was the same:  An independent appeals panel upheld the Commission's denial decision.

The decision of the appeals panel was unanimous:  three votes in favor of affirming the decision, and none opposed.   Unhappy with this outcome, Professional Massage filed this lawsuit

### C.  The Claims in Professional Massage's Amended Complaint

Professional Massage filed its lawsuit on August 16, 2012.  Faced with Professional Massage's vigorous claims of impending financial collapse without accreditation, the Court issued a Preliminary Injunction to maintain the *status quo* during the litigation.  *See* Ex. #5 (Preliminary Injunction Order) and Ex. #6 (Clarification Order).  ACCSC promptly complied with the Court's Orders and returned Professional Massage to its earlier probationary status which provided accreditation.  On March 11, 2013, Professional Massage filed its Amended Complaint.

The 149-paragraph Amended Complaint includes six counts, but contains as many as 12 separate claims.   As shown in FIGURE No. 2 (attached as Ex. #1), these claims can be divided into three groups for analysis:   (1) ACCSC's *Standards of Accreditation* and Department of Education Regulations Claims (the "*Standards*/Regulations" claims), (2) the Ackerman Claims, and (3) the Tortious Interference Claims.

**FIGURE No. 2**

## Claims in PMTC's 1st Amended Complaint

***ACCSC STANDARDS* and DEPARTMENT OF EDUCATION REGULATIONS**

Count 1

> Substance:  ACCSC Procedures  —  ¶ 84-85
> *Standards* re Management  (full-time on-site supervision)  —  ¶¶ 100-101
> Not Evaluate Factors:  Student Outcomes/Waiver -- ¶¶ 86 and 88-94
> ACCSC Staff, Ill-will and bias  —  ¶¶ 105-107
> *Standards* re Faculty:  ¶¶ 95-97 and *Standards* re LRS: ¶¶ 98-99

> Procedure:  Length of Review  —  ¶¶ 102-03
> Not Consider All Evidence (Two Binders)  —  ¶¶ 104

**ACKERMAN CLAIMS**

Count 1  Michael Ackerman on 2010 Site Visit Team  —  ¶ 87 and ¶114(c)
Count 2  Breach of Contract:  *Standards*  —  ¶ 114(a), Code of Conduct--¶ 114(b), and Ackerman on Site Visit Team  —  ¶ 114(c)
Count 3  Negligence: Ackerman on Site Visit Team  —  ¶ 119

**TORTIOUS INTERFERENCE CLAIMS**

Count 4  Program Participation Agreement (PPA)  —  Tortious Interference
Count 5  Current Student Enrollment  —  Tortious Interference
Count 6  Prospective Student Enrollment  —  Tortious Interference

While Professional Massage refers to its Count 1 claims as "Due Process claims," examination reveals them to be allegations that ACCSC did not follow its *Standards of Accreditation* or a regulation.  The "*Standards*/Regulations" Claims in Count 1 include six separate claims of violations, which can be further split into "Substance Claims" and "Procedure Claims."  While both of the "Substance Claims" and "Procedure Claims" ultimately fail in the face of the substantial evidence that supports the ACCSC Commission's decision, they each fail for additional reasons, which will be set forth more fully below.

Counts 2 and 3 are described as the "Ackerman Counts" because they involve Michael Ackerman and arise out of his two-day cameo appearance on the August 2010 Site Visit to Professional Massage.[2]  These two counts, styled as a breach of contract claim (Count 2) paired with an alternative negligence claim (Count 3), fail for legal reasons described below.

Count 4, 5, and 6 allege variations of tortious interference by ACCSC with Professional Massage's business contracts and expectancies.  Under Missouri law, these claims fail because Professional Massage cannot make a showing of an important element: lack of justification of ACCSC's actions.  ACCSC was justified in evaluating Professional Massage's accreditation because Professional Massage *asked ACCSC to do so*.  The very nature of an application submission to ACCSC invites ACCSC to evaluate that application with the possibility of denial.  ACCSC is not required to provide accreditation upon demand.

In this Memorandum, ACCSC will set forth in detail the undisputed material facts documenting the many management and financial problems of Professional Massage.  This forms the "substantial evidence" that the Commission considered when it denied Professional Massage's

---

[2] While Count 1 does contain a brief reference to Mr. Ackerman in Paragraph 87 of the Amended Complaint, this claim ultimately fails for identical reasons that doom Count 2 and Count 3.  As such, it will be addressed in this same section of ACCSC's Memorandum.

accreditation renewal.  And because Professional Massage has the heavy burden to establish a lack of "substantial evidence" that supports the Commission's decision, this Court has the authority and the duty to grant summary judgment to ACCSC on all claims in the Amended Complaint.

### III.  MATERIAL FACTS NOT GENUINELY DISPUTED

#### A.  ACCSC: A Recognized National Accrediting Agency

1.  ACCSC, a non-profit, non-stock Virginia corporation, accredits more than 750 career schools and colleges.  Ex. #45 (Plaintiff's Responses to 1st Request for Admissions), No. 9.

2.  The Secretary of the U.S. Department of Education recognizes ACCSC as a national accrediting agency.  Ex. #7 (July 2011 Dept. of Education Letter).  The recent renewal of this recognition in July 2011 followed a comprehensive review by the Department of ACCSC's *Standards of Accreditation* and of its policies and practices.  Ex. #27 (McComis Aff.) at ¶¶ 5-8; Ex. #8 (Dr. Kershenstein Aff.) at ¶ 8.

3.  The recognition of ACCSC by the Secretary of Education is a confirmation, as determined by the Department of Education, that ACCSC's *Standards* and its policies and practices satisfy the requirements of the Higher Education Act, 20 USC 1099b *et seq*. and the Department's implementing regulations.  Ex. #8 (Dr. Kershenstein Aff.) at ¶¶ 8-16.

4.  All ACCSC's school action decisions are made by the ACCSC Commissioners.  Ex. #27 (McComis Aff.) at ¶ 11.  *See also* ¶¶ 74-76 below.  Consistent with the peer-review process, eight of the 13 Commissioners are elected by the ACCSC-member schools and the rest are appointed. Ex. #27 (McComis Aff.) at ¶ 10.

5.  The ACCSC Commission meets in person four times each year.  The meetings typically last 4-5 days.  Ex. # 28 (McComis Testimony) at 85:24-86:10.  When school action matters come before the Commission, the Commission may first consider the matters in 3-member

subcommittees (referred to as "Panels").  By motion, the Panels make their recommendations to the full Commission.  With limited exceptions (none applicable in this case), Commission actions are by vote of the full Commission.  *See* Ex. #27 (McComis Aff.) at ¶ 11.

### B. Professional Massage's Failure to Demonstrate Adequate Management, Administrative Capacity, and Reasonable Retention of Administrative Staff.

6.    Professional Massage, a Missouri corporation, operates a massage training school in Springfield. Missouri.   Juliet Mee is the 100% owner of Professional Massage.  The school opened in 1994, and was first accredited by ACCSC in 2000.   The accreditation was renewed in 2006 (retroactive to the 2005 application date).   Ex. #45 (Requests for Admissions) No. 2.

7.    In January 2010, the Commission issued a Show Cause Order to Professional Massage. This Order asked about the school's financial problems.  The Commission continued the Show Cause Order in March 2010 and again in June 2010.  This history appears in the letter reporting the Commission's decision to deny the school's Application.  Ex. #23 (Mar. 7, 2012 Letter) at 1-2.

1)    <u>Title IV Eligibility and Compliance</u>

8.    Professional Massage first became eligible for Title IV funding under the HEA in 2004. This was a purely voluntary step—a school does not have to be accredited to operate.  *See. e.g.*, Ex. # 58 (the "Missouri Letter").  Accreditation, however, is a requisite for Title IV eligibility. Title IV programs are administered by the Department of Education. Eligibility means that students attending the school can then seek federal grants and loans.  Ex. #8 (Dr. Kershenstein Aff.) at ¶ 6.

9.    Acceptance of federal money (even indirectly by the school's students receiving federal assistance) goes hand-in-hand with compliance obligations.  To maintain its Title IV eligibility, Professional Massage must adhere to Department of Education financial responsibility standards. Ex. #8 (Dr. Kershenstein Aff.) at ¶ 10.

2)   Professional Massage Cited for Financial Responsibility Failures
by the U.S. Department of Education.

10.    Professional Massage faced continuing problems in its compliance with Department of Education requirements.   Jessica Bell, Professional Massage's former Director of Finance, explained that the school was placed on Heightened Cash Monitoring/Level 2.  She explained, "HCM2 was so drastic and so consuming and so—it overtook everything."  Ms. Bell added, "HCM2 is ginormous."  Ex. #64 (J. Bell TR) 36:19-39:7.

11.    In October 2009, the U.S. Department of Education notified Professional Massage of the school's failure to meet financial responsibility standards for 2008.   The Department required an irrevocable letter of credit from Professional Massage and placed the school on Heightened Cash Monitoring/Level 1 ("HCM1").  Ex. #53 (PMTC 2009-2010 Audit Report) at 10; Ex. #46 (4th Requests for Admission) No. 39.   The Department subsequently notified Professional Massage of the school's failure to meet financial responsibility standards for 2009.   Ex. #53 (PMTC 2009-2010 Audit Report) at p.10; Ex. #46 (4th Requests for Admission) No. 40.

12.    Following a Department of Education program review conducted in January 2010, Professional Massage was cited for (1) failure to properly process Title IV refunds an credit balances, (2) improper Federal Direct Loan Program disbursement, (3) failure to reconcile Title IV funds on at least a monthly basis, and (4) failure to conduct comprehensive file reviews for 2008-09 and 2009-2010 award years.   Ex. #53 (PMTC 2009-2010 Audit Report) at Note 2, at 10; Ex. # 46 (4th Requests for Admission) Nos. 44-45.

13.    In August 2010, the U.S. Department of Education transferred Professional Massage to Heightened Cash Monitoring Level 2 ("HCM2").  Ex. #53 (PMTC 2009-10 Audit Report); Ex. #46 (4th Requests for Admission) No. 47.

3)   Financial Troubles and Erratic Management Plagued Professional Massage.

**ACCSC'S Summary Judgment Memorandum – Page 11 of 45**

14.   For 2009, Professional Massage's auditors described conditions "that raised substantial doubt about PMTC's ability to continue as a going concern."   Ex. #53 (PMTC 2009-10 Audit Report) at 1; Ex. #54 (PMTC 2011 Audit Report).

15.   Financial problems continued to plague the school in 2010 and 2011.   *See, e.g.*, Ex. #59 (PMTC 30b6 TR) 271:15-272:16.   Bills went unpaid by Professional Massage and key vendors terminated services.   For example, Professional Massage had not paid FAME, its third-party processor for Department of Education filings.   Ex. #59 (PMTC 30b6 TR) 165:3-166; Ex. #64 (J. Bell TR) 80:5-82:4 and 84:3-84:25.   Payroll was often late.   Ex. #59 (PMTC 30b6 TR) 166:3-7; Ex. #64 (J. Bell TR) 34:3-35:13.   Professional Massage was sued multiple times by unpaid vendors and faced liens from the Missouri Department of Revenue.   Ex. #47 (Missouri Court Dkt.).   At times, the school was being run on credit cards.   Ex. #64 (J. Bell TR) 43:1-44:19.

16.   Professional Massage was unable to pay DL Media, its media and marketing vendor. Ex. #64 (J. Bell TR) 63:14-65:1.   DL Media curtailed services and Professional Massage's marketing efforts dropped sharply beginning in mid-2011 and have stayed at minimal levels.   Ex. #55 (PMTC Prospective Student Contacts and Marketing Expenditures—Summary Exhibit).

17.   In July 2011, Juliet Mee acknowledged in a letter to the school's vendors (many of whom remained unpaid for months or even more than a year) the school's difficult financial situation.   Ex. #62 (July 2011 Vendor Email); Ex. #61 (J. Mee TR) 203:9-204:16.   She began her message with an apology: "I would like to apologize for the erratic performance of our company and myself.   Please allow me to explain my recent (somewhat bewildering) actions and inactions." Later in the correspondence Ms. Mee wrote:

> I do imagine that potentially some of you are saying, "I know how you survived. You didn't pay our bills and you passed on your troubles to us." Although painful to admit, this is a fair statement.

More of the email revelations are set forth in Ms. Mee's deposition transcript. Ex. #61 (J. Mee TR) 206:7-209:15; 211:16-214:2; and 214:8-218:12.

18.   Professional Massage's 2010 Federal Tax Return shows a loss of $221,751.  Ex. #56 (PMTC Revenue/Profit Summary); Ex. #57 (PMTC 2010 Federal Tax Return).  Yet during that year Professional Massage paid $135,615 of operating costs on behalf of separate entities wholly-owned by Juliet Mee.  Ex. #61 (J. Mee TR) 287:7-288:3.  While staff payrolls were late, the school paid Juliet Mee advances of more than $40,000, and at year-end, the school held a $136,827 unsecured receivable from Ms. Mee.  Ex. # 53 (PMTC 2009-10 Audit Report); Ex. #61 (J. Mee TR) 289:7-11 and 289:17-290:10; Ex. #59 (PMTC 30b6 TR) 202:20-203:21 and 204:2-11.

4)   Professional Massage's Staff/Faculty "Revolving Door".

19.   During 2010-11, Professional Massage's combined staff and faculty included 22-25 individuals.  Ex. #61 (J. Mee TR) 22:10-23:3.   As shown in FIGURE No. 3, during a mere two-year span, the school suffered 15 resignations, and Ms. Mee fired 18 more staff/faculty.  These numbers do not include the multiple terminations in June 2010 when Ms. Mee terminated the entire staff and faculty, including herself.  Ex. #61 (J. Mee TR) 78:2-79:12; Ex. #61 (J. Mee TR) 198:11-199:11.   Ms. Mee explained that she fired everyone when "she felt the staff was trying to sabotage the process."  Ex. #59 (PMTC 30b6 TR) 272:17-273:9.

20.   2011 was a volatile year for the staff /faculty at Professional Massage.  There were 21 departures—10 resignations and 11 firings during the year.   Ex. #61 (J. Mee TR) 199:12-

**FIGURE No. 3**

| Professional Massage Resignations and Terminations, 2010-11 | | |
|---|---|---|
| | Resignations | Terminations |
| 2010 | 5 | 7 |
| 2011 | 10 | 11 |
| Total | 15 | 18 |

200:1.   Given the staff size, this represents 85-95% turnover in just one year.

21.   At the start of 2010, the Management Team at Professional Team consisted of Juliet Mee and Jessica Bell.  In mid-2010, Professional Massage recruited Susan Hoescht as the School Administrator.  Juliet Mee fired Ms. Hoescht after 30 days.  Ex. #61 (J. Mee TR)  69:9-19.  In late 2010, Professional Massage recruited Veronica Moody as the School Administrator.  After 30 days, Ms. Mee fired Ms. Moody.  Ex. #61 (J. Mee TR) 74:10-20.   At the time of the 2nd Site Visit, the school had had three different school administrators in the last nine months.   Ex. #59 (PMTC 30b6 TR) 308:7-309:20.

22.   When ACCSC conducted the 2nd Site Visit in June 2011 (see below at ¶¶ 46-52), April Durnell had recently joined Professional Massage as the School Administrator, and Rebecca Cox was scheduled to begin with the school the next week.  Ex. #68 (Durnell TR) 38:14-39:1; 42:19-34:10.

23.   At the 2nd Site Visit, Juliet Mee explained to ACCSC's Lisa Miles that Ms. Durnell was "like a breath of fresh air" and that "she brought some real good things to the school."   Ex. #59 (PMTC 30b6 TR) 279:15-281:1.   Jessica Bell said of Ms. Durnell, "I've been in proprietary education for a very long time, and April is the best that I know in regards to compliance."  Ex. #64 (J. Bell TR) 229:12-233:4.

24.   In Professional Massage's Response to the 2nd Team Summary Report, the school identified its new Management Team.  Ex. # 66 (PMTC's Organizational Charts and Summary Exhibit).  The chart shows that Ms. Mee was the Owner, Rebecca Cox the School Director, and April Durnell the School Administrator.  Ex. #19 (PMTC Response to 2nd Team Summary Report); Ex. #68 (Durnell TR) 68:21-69:16.  The Response included Ms. Cox's resume (20 years in school operations, including 14 years as a School Executive Director) and Ms. Durnell's resume

(24 years in school administration, including 16 years as a School Administrator).   Ex. #69 (Durnell Resume) and Ex. #73 (Cox Resume).

25.   Rebecca Cox testified that Juliet Mee said several times that she hired Ms. Cox "because she needed to hire somebody with my credentials to be able to run the school, to be able to become accredited . . ."  Ex. # 72 (Cox TR) 49:14-49:23.  Notwithstanding Ms. Cox's experience and Professional Massages' representations to the Commission, Juliet Mee never allowed her to run the school.  Ex. #72 (Cox TR) 49:24-50:2.

26.   On Friday, December 2, 2011, Juliet Mee fired Rebecca Cox,[3] and then on the following Monday, she fired April Durnell.  Ex. #61 (J. Mee TR) 66:13-67.1; Ex. #68 (Durnell TR) 76:6-77:1.  Jessica Bell resigned back in mid-July.  Ex. #64 (J. Bell TR) 250:12-251:4.  About her short time at Professional Massage, April Durnell wrote in an email days after her firing:  "My time at PMTC has been very difficult, and Juliet [Mee] is less than willing to utilize my experience . . . [Juliet Mee] has to be in control of everything, and if not she terminates whatever is standing in her way.   I have to accept that I just can't help those that don't want to change."  Ex #70 (Dec 9, 2011 A. Durnell email to Lisa Miles).

27.   As of December 7, 2011, Professional Massage's Management Team from early July had been gutted.  Ex. #68 (Durnell TR) 72:6-73:24; see FIGURE No. 1 above at Page 5.  Even Ms. Mee's brother, Jermiah Mee, quickly left.  He substituted as the Director of Finance starting shortly after Jessica Bell resigned and was gone within six months.

---

[3]   Rebecca Cox testified that she resigned.  Ex. # 72 (Cox TR) 73:1-77:4.  She provided a handwritten resignation letter and an email from Juliet Mee accepting the resignation.   Ex #75 (Cox resignation) and Ex #76 (Mee email accepting resignation); Ex. # 72 (Cox TR) 78:9-78:16.  Ms. Mee, however, contends that she fired Ms. Cox.  Ex. #61 (J. Mee TR) 66:13-67:1.

28.   In its Response to the December 7, 2011 Probation Order, Professional Massage identified Jeremy Beatty, previously the school's Corporate Services manager, as the new Compliance Administrator.   Linda Mayhugh was identified as the new Curriculum Administrator. Ex. #66 (PMTC Organizational Charts).

29.   The "Compliance Administrator Job Description" from Professional Massage specifies a minimum of three years' experience in a related position.  Ex #79 (Job Description) and Ex. #80 (Beatty Resume)   Beatty testified that the Job Description was written *after* Ms. Mee told him that he would replace April Durnell.  Ex. #78 (Beatty TR) 145:11-146:15.  Mr. Beatty's resume does not show the minimum experience.  Ex. #80.  Similarly, Ms. Mayhugh's resume does not show the minimum 3-year's related experience for the Curriculum Administrator position.  Ex. #21.

**C.  ACCSC's *Standards of Accreditation***

30.   ACCSC's Rules of Procedure and its Substantive Standards are stated in its *Standards of Accreditation,* a 112-page volume.  Ex. #2 (*Standards of Accreditation*).   The *Standards* confirm in the Introduction that "[p]articipation in the process of accreditation is voluntary on the part of the school."   The Introduction continues, "[b]y applying for and receiving accreditation, a school accepts the obligation to demonstrate compliance with the *Standards of Accreditation."* And, "[b]y applying for and receiving accreditation, a school accepts the obligation to demonstrate compliance with the *Standards of Accreditation."*  Ex. #2 *(Standard),* Introduction at page 1.

31.   Chapter 1 of the *Standards* contains the Rules of Process and Procedure while Chapter 2 includes the Substantive Standards.   Section 1 of Chapter 2, titled "Management and Administrative Operations," states that "[t]his section addresses the requirements schools *must* meet in regard to management and administrative capacity, qualifications of management and administrative personnel, [and] financial stability. . . ."  Ex. #2 (emphasis added).  *See also* Ex.

#27 (McComis Aff.) at ¶ 15.  As shown in FIGURE No. 4 below, the Substantive Standards

require:

### FIGURE No. 4



**1. The school <u>must</u> have adequate management and administrative capacity in place that includes:**

> ACCSC
> STANDARDS OF ACCREDITATION
>
> CHAPTER 2
> SUBSTANTIVE STANDARDS

A.  **Management and Administrative Capacity**

1.  The school must have adequate management and administrative capacity in place that includes:

   a.  Full-time on-site supervision by an individual or team with the appropriate combination of education, experience, and demonstrated ability to lead and manage a post-secondary educational institution;

   b.  Owners, members of school management, and administrative employees who are qualified for their particular roles and who possess the appropriate education, training, and experience commensurate with the level of their responsibilities;

   c.  A sufficient number of managers and administrative employees necessary to support the school's operations, student services, and educational programs; and

   d.  Appropriate administrative and operational policies and procedures to which the school adheres and reviews and updates as needed.

2.  All owners, members of school management, and administrative employees must have past records of integrity that would ensure compliance with accrediting standards and applicable federal, state, and local requirements. The Commission will consider an individual's affiliation with a school that has lost or been denied accreditation, entered into bankruptcy, or closed; as well as an individual's involvement in criminal proceedings and any pending or past action in a court or administrative body.

3.  Members of school management and administrative employees must participate in ongoing development and training activities that support their particular roles in the school.

4.  The continuity of management and administrative capacity is ensured through the reasonable retention of management and administrative staff.

**4.   The continuity of management and administrative capacity is ensured through the reasonable retention of management and administrative staff.**

### C.  ACCSC's Consideration of Professional Massage's Application

32.   ACCSC's Rules of Process and Procedure, found in Chapter 1 of the *Standards of Accreditation,* specify the steps in the accreditation process.  FIGURE No. 5 maps the overall process followed.  As shown in ¶¶ 34-66 below, ACCSC followed the process and the associated procedures in its consideration of Professional Massage's Application for Renewal of Accreditation.

**FIGURE No. 5**



1)    <u>Accreditation Renewal Application and Self-Evaluation Report</u>



34.    Under the *Standards*, a school seeking accreditation (or renewal of accreditation) prepares and submits an Application and a Self-Evaluation Report (SER).   In late-January 2010, Professional Massage submitted its Application for Renewal of Accreditation.  Ex. #10 (PMTC Application).  Professional Massage soon requested a one-month extension of the time for filing its SER; ACCSC granted the request.  Ex. #27 (McComis Aff.) at ¶ 56.

1)    <u>Accreditation Process: First Cycle: Visit-Team Report-Response</u>



35.    Under the *Standards*, a school's Self-Evaluation Report is followed by a Site Visit to the applying school by a team from ACCSC.  Ex. #27 (McComis Aff.) at ¶ 21.

**ACCSC'S Summary Judgment Memorandum – Page 18 of 45**

36.    ACCSC scheduled the Professional Massage Site Visit for August 9-10, 2010.   Ex. #27 (McComis Aff.) at ¶ 21 and ¶¶ 53-55.   Professional Massage approved the date and time for the visit.   Ex. #59 (PMTC 30b6 TR) 227:12-228:16; Ex. #38 (ACCSC 30b6/Moraites TR) 288:3-289:7.   Courtney Moraites served as the lead ACCSC staff member.  Lisa Miles, ACCSC's Manager of Accreditation, was also on the team.   The team members from member schools included Michael Ackerman and three others.   Ex. #59 (PMTC 30b6 TR) 230:17-231:20   Ex. #34 (Miles TR) 31:2-19.

37.    The 1st Site Visit required two days.   At various times during the visit, the ACCSC team met to discuss its findings.  Ex. #34 (Miles TR) 192:10-194:12.   During those sessions, Ms. Moraites prepared the draft team findings to which all members of the team contributed.   Ex. #34 (Miles TR) 31:2-31:19.  Ms. Moraites presented the findings at the Exit Interview.

38.    Following the Site Visit, Ms. Moraites wrote the Team Summary Report.  Ex. #34 (Miles TR) 30:4-30:10.   In late September, Ms. Moraites sent the Team Summary Report to Professional Massage. Ex. #12 (1st Team Summary Report).

39.    This September 2010 Team Summary identified 13 areas where Professional Massage was not in compliance with the *Standards of Accreditation,* including, among others, the school's failure to demonstrate that it has adequate management capability and sufficient administrative capacity to ensure that the school will operate in compliance with accrediting standards, meet objectives, and fulfill obligations to students.  Ex. #27 (McComis Aff.) at ¶ 21.

40.    As permitted under the *Standards*, Professional Massage responded to the Team Summary Report.   The Response was late, but ACCSC accepted the filing.   Ex. #27 (McComis Aff.) at ¶ 21.  In the Response, Professional Massage stated: "We agree that Professional Massage Training Center, Inc. failed to demonstrate to the ACCSC on-site team that we are in compliance

with the Standards of Accreditation in many areas, as noted in the team summary report."  Ex. #61

(J. Mee TR) 137:18-141:8.  The school also acknowledged that it withheld information from the

ACCSC team during the Site Visit.  Ex. #61 (J. Mee TR) 147:14-151:11.   Finally, the school

made an emotional plea to ACCSC and stated that it had "put our hopes in the compassion of the

members of the commission."   Ex. #61 (J. Mee TR) 152:4-15.

> 2)  The First Probation Order, a "Plea for Help," and the School's Response to the Order



41.   The ACCSC Commissioners voted at

their November 2010 meeting to place Professional

Massage on probation.  ACCSC reported this action to Professional Massage in a letter dated

December 8, 2010.  Ex. #14; Ex. #27 (McComis Aff.) at ¶ 22-23.  The Probation Order identifies

multiple areas where Professional Massage failed to demonstrate compliance. *Id.*

42.    The Commission met in November 2010.  Its examination of the record for the

Professional Massage Application led to the conclusion that the school failed to demonstrate

compliance in multiple areas, including failure to demonstrate that the school has adequate

management and administrative capacity, and failed to demonstrate that the school provides

continuity of instruction through reasonable retention of the educational administrative staff and

faculty. Ex. #14 (Dec 8, 2010 Letter re Probation Order); Ex. #27 (McComis Aff.) at ¶ 22.

43.    Professional Massage filed its Response to the December 2010 Probation Order.  Ex.

#15 (PMTC Response).

44.    In early 2011, Professional Massage recruited April Durnell to be part of the

Management Team, specifically to be the School Administrator.  Ex. #68 (Durnell TR) 21:24-

22:14.  Regarding Ms. Mee's understanding of school compliance, April Durnell testified that

"[Juliet Mee] indicated that she didn't understand why all the paperwork has to be done, and she doesn't know how to go about getting it all done . . . ."  Ex. #68 (Durnell TR) 25:5-26:15.

3)   <u>The Commission Vacates Probation Order and Directs Second Site Visit</u>

**8** June 2011 Order Vacating Probation & Directing 2nd Site Visit to PMTC          45.   Professional Massage's Application came before the Commission at its May 2011 meetings.   The Commission then vacated the Probation Order.  Ex. #27 (McComis Aff.) at ¶ 24.   At the same time, the Commission directed a second Site Visit.  The Commission's Order specified its concerns, and instructed the visiting team to answer certain questions.  Ex. #16 (June 8, 2011 Letter Reporting Commission Action); *See* Ex. #27 (McComis Aff.) at ¶ 24.

4)   <u>Accreditation Process:  Second Cycle: Visit-Report-Response</u>



46.   The 2nd Site Visit to Professional Massage was on June 23, 2011.  Ex. #27 (McComis Aff.) at ¶ 25.  ACCSC's Lisa Miles was the staff team member, while Molly Hager, a volunteer from Platt College, served as the Team Leader.  Ex. #34 (Miles TR) 185:1-6.  Ms. Hagar was chosen for the team because of her expertise in school management and administration.  Ex  #34 (Miles TR) 99:1-11.

47.   On this 2nd Site Visit, the ACCSC team met April Durnell.  Ex. #34 (Miles TR) 93:18-94:6.   Ms. Durnell was introduced by Juliet Mee as the School Administrator.  Juliet Mee identified Rebecca Cox as an experienced school director who would soon manage the day-to-day operations at Professional Massage.   Ex. #34 (Miles TR) 202:20-203:17.

48.   The 2nd Site Visit was a 1-day event.  The day started with a lengthy statement by Juliet Mee.  April Durnell, who has two decades of accreditation experience, described the session: "It's

probably the longest opening meeting I've ever been to." Ex. #69 (Durnell TR) 56:3-57:14.  Lisa

Miles also noted the long-winded statement by Juliet Mee.  Ex. #34 (Miles TR) 199:12-201:7.

49.    During the visit, April Durnell made available documents responsive to the

Commission's questions.  She organized these in two binders, which she provided to Ms. Miles.

Ex. #68 (Durnell TR) 43:19-45:17.   Ms. Miles took the binders with her, later reviewed them, and

then included information from the binders in the 2nd Team Summary Report.   Ex. #34 (Miles

TR) 87:11-88:6.  She later reported, "They handed us two huge binders, which I didn't have time

to go through that day, so I've ground though it page by page."   Ex. #34 (Miles TR) 91:2-91:13.

50.    ACCSC has clear requirements for the submission of documents.  In both Team

Summary Reports sent to Professional Massage, the following instruction appeared:

> Professional Massage Training Center is required to submit its response in an
> electronic format, prepared in accordance with ACCSC's *Instructions for*
> *Electronic Submis*sions, which are available online at www.accsc.org.

*See, e.g.,* Ex. #12 (1st Team Summary Report) at 1; Ex. #18 (2nd Team Summary Report) at 1.

When Professional Massage at other times made formal submissions to ACCSC, the school

followed the procedures that required PDF submissions on CDs or flash drive.  Ex. #68 (Durnell

TR) 67:13-25; Ex. #31 (Forman TR) 255:6-257:21.  In a response, a school can demonstrate full

compliance and set forth its view of the on-site visit. Ex. #2 (*Standards*), Ch. 1, Sec. III(K), p. 16.

51.    Ms. Durnell had no expectation that the materials in the two binders would be made

part of the ACCSC official record by Ms. Miles.  Ex. #68 (Durnell TR) 142:21-24.  Ms. Miles

never said that she was going to deliver the binders to the Commission.   Ex. #69 (Durnell TR)

142:14-23.   Indeed, Professional Massage later included portions of the materials in its Response

to the Team Summary Report for the 2nd Site Visit.   Ex. #68 (Durnell TR) 66:14-67:12.  Also,

Ms. Mee testified that "[t]he binders were not a submission." Ex. #59 (PMTC 30b6 TR) 285:5-6.

52.   Following the 2nd Site Visit, April Durnell understood that Professional Massage was not in compliance with the ACCSC Standards—in her words, "there was still a lot of work to do." Ex. #68 (Durnell TR) 61:16-63:2.   She recounted "I also begged Lisa [Miles] to give me a chance."   And when asked whether "she understood at that point that there was a probability that accreditation would not be renewed," she answered "Yes."  Ex. #68 (Durnell TR) 63:3-64:4.

5)   The Commission's December 2011 Probation Order, the Arlington Meeting,
     and Professional Massage's Response to the Probation Order

Commission's December 2011 Probation Order   12   13   PMTC's Response to Probation Order

53.   The ACCSC Commission met in November 2011.  The Professional Massage Application was again on the Commission agenda.  The Commission voted to reinstate its Probation Order.  Ex. #27 (McComis Aff.) at ¶ 26.  ACCSC reported this action to Professional Massage in a detailed letter.   Ex. #20 (Dec 7, 2011 Letter Reporting Probation Order).

54.   The Commission identified multiple standards for which the school was currently not in compliance.  Putting Professional Massage on notice, the Commission directed that:

o PMTC must demonstrate that the school ensures the continuity of management and administrative capacity through the reasonable retention of management and administrative staff *(Section I (A)(4), Substantive Standards, Standards of Accreditation).*

o PMTC must demonstrate that it maintains full-time on-site supervision by an individual or team that has the demonstrated ability to lead and manage the institution *(Section I (A)(1), Substantive Standards, Standards of Accreditation).*

Ex. #20, p. 3 (Dec. 7, 2011 Probation Order).

55.   Before Juliet Mee fired April Durnell, Ms. Durnell talked with Ms. Mee about Professional Massage's status with ACCSC.  Ms. Durnell told her that "It's not over yet" and that "that there's little substantive supporting documentation that could be provided [to demonstrate]

**ACCSC'S Summary Judgment Memorandum – Page 23 of 45**

that we're back in compliance 100%." Ex. #68 (Durnell TR) 85:23-87:14. She added, "We've got

to wait and see, you now, what the letters say, because we're not there yet. . . ." *Id*. at 90:10-12.

56.   Professional Massage's Response was due on January 12, 2012.   On January 17,

2012—five days after the due date— Dr. McComis sent Ms. Mee an email telling her that ACCSC

had not received a Response from Professional Massage.   Ms. Mee answered that Professional

Massage had not requested an extension but was then asking for one.   An extension to January 19,

2012 was granted.   Ex. #27 (McComis Aff.) at ¶ 28.   A package arrived, late, on January 24,

2012; Sean Forman determined that the enclosed Response was incomplete, advised Ms. Mee of

this. Ex. #31 (Forman TR) 214:6—215:20.   Professional Massage sent another version, which it

apparently back-dated to January 10, 2012.   *Id.* at 215:21-218:11.

### D.  The San Diego Meeting: The Commission's 12-0 Vote, the March 7, 2012 Denial Letter and the Subsequent PMTC Appeal, Hearing and Appeal Denial.

1)   The Commission's 12-0 Vote to Deny Professional Massage's
<u>Application for Renewal of Accreditation.</u>



57.   The Professional Massage Application was on the agenda for

the Commission's February 2012 meetings in San Diego.   The matter

was assigned to Panel D, one of the Commission's four subcommittees.   Ex. #31 (Forman TR)

222:15-213:11.

58.   Panel D considered the Application when it met on Saturday, February 4, 2012.   Ex.

#41 (Mollis TR) 41:11-41:19.   After review of its December 2011 Probation Order and the

relevant materials, including the school's Response to the Order, all Panel members agreed to

recommend to the full Commission that Professional Massage's Application for Renewal of

Accreditation be denied.   Ex. #31 (Forman TR) 234:20-237:6; Ex. #41 (Mollis TR) 40:17-24.

59.     Sean Forman, the ACCSC staff assigned note taker on the Professional Massage matter, prepared the Compliance Summary Memorandum that stated the Panel's recommendation. Ex. #33 (Compliance Summary Memorandum); Ex. #31 (Forman TR) 229:13-232:1 and 232:21-234:4;  Ex. #41 (Mollis TR) 41:20-42:16.  The Panel Chair, Commissioner Allan Sharpe, reviewed and approved the Memorandum.   Ex. #31 (Forman TR) 240:12-241:17.  The Memorandum was then distributed to the full Commission in advance of the Monday Commission meeting.  Ex. #31 (Forman TR) 240:12-241:17 and 241:18-243:20.

60.     At the full Commission meeting, Mr. Sharpe recommended by motion that Professional Massage's Application be denied.   The full Commission voted 12-0[4] in favor of the motion to deny.  Ex. #31 (Forman TR) 245:11-247:7; Ex. #27 (McComis Aff.) at ¶ 29.

2)     March 7, 2012 Denial Letter: Commission Action Reported

61.     The Commission's action denying Professional Massage's Application was reported to Professional Massage.  Ex. #23 (Mar. 7, 2012 Letter).  ACCSC's Sean Forman drafted the letter that reported the Commission's action.  Ex. #31 (Forman TR) 247:8-255:1.

62.  Mr. Forman confirmed that the March 7, 2012 letter accurately states "the deliberations and decision of the Commission to deny the accreditation application of Professional Massage Training Center."  Ex. #31 (Forman TR) 254:17-255:1.   Kristi Mollis, a Commissioner and a member of Panel D, confirmed that the decision letter accurately reflects the reasons for the panel's recommendation of revocation.  Ex. #41 (Mollis TR) 65:20-65:34.

---

[4]  The Commission Chair presides at the Commission's meeting, but does not vote unless there is a tie.  Hence, 12 of the 13 Commissioners present voted.

3) <u>An Independent Appeals Panel Denied PMTC's Appeal</u>



63.   Professional Massage failed to timely file its Application for Appeal of a Commission Decision.  ACCSC nonetheless accepted the late filing. Ex. #27 (McComis Aff.) at ¶ 49.   An independent Appeals Panel was named, and an Appeal Hearing scheduled.  At the start of the Hearing, the panel noted that Professional Massage's counsel, David Harpool, had previously represented the school of one of the Appeals Panel members.  On the record, Mr. Harpool waived on behalf of Professional Massage any conflict regarding the composition of the panel.  Ex. #27 (McComis Aff.) at ¶ 52.   Ex. # 24 (Appeals Hearing TR) at 4.

64.   During the Appeals Hearing, David Harpool stated that Juliet Mee "rubbed some people the wrong way."  Ex. #24 (Appeal TR) at 15.  Then Mr. Harpool mentioned that it was "possibly true" that Ms. Mee was "difficult to work for."  *Id*. at 31.   Mr. Harpool's carefully crafted comments regarding Juliet Mee's manner and behavior are supported elsewhere in the record.  April Durnell testified that "[Juliet Mee] rants and raves a lot."  Ex #68 (Durnell TR) 50:24.  Rebecca Cox cited Ms. Mee's abusive behavior (*e.g.,* "She pointed her finger at me and said, 'Get the fucking money in here.'") as to why she was uncomfortable at Professional Massage.  Ex. #72 (Cox TR) 76:19-77:17.  Jessica Bell reported similar conduct.  Ex. #64 (J. Bell TR) 241:24-244:5.  Even Jeremy Beatty, when describing his last day at Professional Massage, reported Ms. Mee's foul-mouthed tirade.  Ex. #78 (Beatty TR) 16:11-20:5.

65.   The ACCSC record of the proceedings related to the Professional Massage's Application was provided to the Appeals Panel members.   The Appeals Panel heard argument and subsequently denied the appeal.   The notification letter went to Professional Massage. Ex. #26 (July 12, 2012 Letter Reporting Denial of Appeal); Ex. #27 (McComis Aff.) at ¶ 30.

### E.  Michael Ackerman and the 1st Site Visit

66.    Michael Ackerman was a member of the visiting team for the 1st Site Visit to Professional Massage.  Ex. #34 (Miles TR) 188:20-189:5; Ex. # 43 (Ackerman TR) 5:20-7:03.[5] He was not an ACCSC employee, but rather a volunteer member of the visiting evaluation team. Ex. # 43 (Ackerman TR) 14:19-15.9.  Mr. Ackerman had served on ACCSC teams 30-40 times previously.  Ex. # 43 (Ackerman TR) 7:19-7:25.  No complaints have been filed regarding Mr. Ackerman in the years he served as a volunteer.  Ex. # 43 (Ackerman TR) 21:12-21:16.  As a team member, he signed ACCSC's Code of Conduct.  *See* Ex. #39 (ACCSC Code of Conduct).

67.    During the 1st Site Visit to Professional Massage, Mr. Ackerman kept notes using a form provided by ACCSC.  Ex. # 44 (Ackerman Notes); Ex. # 43 (Ackerman TR) 12:21-14:12.

68.    As of August 9, 2010, the first day of the 1st Site Visit, Mr. Ackerman was employed by ATI Enterprises, Inc. ("ATI").  At the time, ATI operated multiple schools in several states. Ex. #42 (Sharpe TR) 28:20-22;  Ex. #27 (McComis Aff.) at ¶ 29.

69.    In hearings before a Senate Subcommittee on August 4, 2010, a GAO Report summarized its investigation of potentially unlawful recruiting practices at several career schools. The Report did not identify the schools, but in questioning at the end of the hearing, a GAO investigator named several schools, including ATI (but not naming any specific ATI campus or school).  Ex. #27 (McComis Aff.) at ¶ 38.  Professional Massage acknowledges that Mr. Ackerman was never mentioned in the hearings.  Ex. #59 (PMTC 30b6 TR) 238:16-240:6.

70.    Professional Massage contends that Mr. Ackerman was the "school director" at ATI's Dallas campus.  Ex. #59 (PMTC 30b6 TR) 235:19-236:10.   In fact, Michael Ackerman was not

---

[5] Professional Massage's Amended Complaint alleges that Michael Ackerman made offensive statements to Juliet Mee.  When asked about the alleged statements, Mr. Ackerman denied making any such statements.  Ex. # 43 (Ackerman TR) 16:9-21:16.

the director of any of the ATI schools, but was on the corporate staff and did none of his work from the Dallas campus.   Ex. # 43 (Ackerman TR) 33:8-34.9.

71.    Dr. McComis, ACCSC's Executive Director, was present at the Senate hearings. Following the hearings he promptly contacted GAO to request the information behind the Report. GAO refused to provide the information.   Ex. #27 (McComis Aff.) at ¶ 40.

72.    As of August 9, 2010, ACCSC was unaware of any allegations of wrong-doing by Michael Ackerman.   Ex. #27 (McComis Aff.) at ¶ 37.   As of today, ACCSC is unaware of Mr. Ackerman being named in any investigation of wrongdoing.   *Id.*

73.    ACCSC's *Standards of Accreditation* permit a school to object to an assigned team member before a Site Visit.   Ex. #2 (*Standards*) at Ch. 1, Sec. III(E)(2)-(4).   The *Standards* also include a formal complaint procedure.   *See* Ex. #2 (*Standards*) at Ch.1, Sec. III(E)(3).   Prior to the Site Visit, Professional Massage made no objections about Michael Ackerman or any ACCSC staff or assigned team member, and during the accreditation process, Professional Massage never submitted any formal complaint about Mr. Ackerman.   Ex. #59 (PMTC 30b6 TR) 231:21-232:7. Ex. #27 (McComis Aff.) at ¶ 44.   Even in its Response to the 1st Team Summary Report and later Grounds for Appeal, Professional Massage made no objection to Mr. Ackerman's participation.

**F.  Commissioners Make Decisions: No Commissioner Bias or Prejudice.**

74.    The Commission decisions are made by vote of the Commissioners.   Ex. #41 (Mollis TR) 80:5-80:10 and153:16-154:5.   *See also* Ex. #34 (Miles TR) 126:2-16.   Indeed, the staff does not vote and it never makes recommendations to the Commissioners.   Kristi Mollis, one of the voting Commissioners on the Professional Massage Application denial, testified in her deposition:

> This was a complicated school. So the issue that -- The information that we reviewed included everything that the school provided as well as the history. *The staff members never as long as I've been on the commission have ever provided a recommendation to the commission. That's our job.* So what we try to do is get as

much information as we can, including the history, including any other documents we might want to review so we can have a discussion and make a decision.  This document contains a lot of information that some of which we did review at the time of the discussion *but did not in any way ever include a recommendation provided by the staff.  That would be inappropriate, and that's not their job to do that.  That's our job.*

Ex. #41 (Mollis TR) 69:9-70:1. *See also* Ex. 42 (Sharpe TR) 41:5-17, 57:19-58:18, and 75:22-25.

75.    Ms. Mollis testified that she never met Juliet Mee or anyone employed at Professional Massage.  Ex. #41 (Mollis TR) 35:22-36:6.  Juliet Mee confirmed, looking at a listing of the Commissioners (Ex. # 30), that she did not know any of the Commissioners, and that none of them had ever been to the school.  Ex. #59 (PMTC 30b6 TR) 334:6-335:9.  Professional Massage identifies no bases for any individual bias or prejudice by any of the Commissioners against the school.  For example, when asked "apart from what you contend to be staff influence, can you identify any reason for an individual bias or prejudice against you or your school on the part of any of the three Panel D commissioners?"  Ms. Mee answered, "No, the only bias would be influenced by ACCSC staff."   Ex. #59 (PMTC 30b6 TR) 336:1-337:17.

**G.  ACCSC Staff Role; Communications Regarding Professional Massage**

76.    ACCSC's staff does not make Commission decisions.  The staff does not even make recommendations to the Commissioners.   From the staff view, consider Lisa Miles's testimony:

| PMTC Counsel: | Okay.  Is there any recommendation made by ACCSC staff to either the panels or the commission about what should happen to the school? |
|---|---|
| L. Miles: | No. |
| PMTC Counsel: | Ever? |
| L. Miles: | No, sir. |

Ex. #34 (Miles TR) 127:9-14.

77.    In December 2011, after receiving notice of the Commission's December 7, 2011 Probation Order, Juliet Mee came to ACCSC's offices in Virginia to meet with Dr. McComis.

ACCSC staff members Chris Lambert and Sean Forman also attended the meeting.  Ex. #27 (McComis Aff.) at ¶ 27.

78.   After the meeting, Mr. Lambert emailed Lisa Miles, "Just finished an hour and 45 minutes meeting with Ms. Mee.  Please send more fudge."  He added, "Hard to get a word in edge wise."  Ex. # 36 ("More Fudge" email thread).   Lisa Miles replied, "So true.  She is not a good listener."  Mr. Lambert then answered:  "I understand.  Truly.  But not wanting to be on probation is not enough to not be on probation.   I am hopeful that we gave her sound advice but was getting frustrated.  She took one breath in 90 minutes."  *Id.*  To which, Ms. Miles added: "That is so Juliet."  *Id*.

79.   As Lisa Miles observed in her deposition, with Ms. Mee "there was a lot of talking, but not much listening."  Ex. #34 (Miles TR) 140:18-141:6; Ex. #34 (Miles TR) 160:7-19.  She added that the reference to "more fudge" was quite real.  Lambert and Miles have been friends for more than 16 years, and every year makes and sends Christmas fudge.  Mr. Lambert is known in the office for shamelessly leveraging work events for more Christmas fudge from Ms. Miles  Ex. #34 (Miles TR) 145:15-146:7.  Mr. Lambert concurs, but adds that the December 20th meeting was both challenging and frustrating.  Ex. #35 (Lambert TR) 176:18-181:6.

## IV.   LEGAL ARGUMENT

### A.  The Count 1 Substantive Claims Fail.

1)   "Substantial Evidence" Supports the ACCSC Commission's Decision.

This Court's review is limited to whether the Commission's decision terminating Professional Massage's accreditation was "arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Thomas M. Cooley Law School*, 459 F.3d at 712.  While more limited, this review is similar to reviews of governmental agency

decisions under the APA.  *See id.*  In this context, the "arbitrary and unreasonable" standard is similar to the "arbitrary and capricious" standard utilized by courts when reviewing agency decisions under the APA.  *See* 5 U.S.C. § 706(2).  *See also Shipbuilders Counc. v. U.S. Dept. of Homeland Security,* 770 F. Supp. 2d 793, 809 (E.D. Va. 2011).

The Fourth Circuit has defined the "arbitrary and capricious" standard:  "In practice, an action will not be considered arbitrary and capricious so long as the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made."  *Almy v. Sebelius,* 679 F.3d 297, 302 (4th Cir. 2012)  (internal quotation marks and citations omitted).

The decision of the ACCSC Commission to terminate Professional Massage's accreditation is entitled to "great deference," and ACCSC is entitled to summary judgment if there is "substantial evidence" that supports its decision.  Such substantial evidence undisputedly exists in this case.

It is undisputed that the *Standards of Accreditation* sets forth the "requirements schools *must* meet in regard to management and administrative capacity, qualifications of management and administrative personnel, [and] financial stability."  Ex. #2 (*Standards,* Ex. #2) Ch. 2, Sec. I, at 63 (emphasis added).  In its March 7, 2012 Denial Letter, Ex. #23, ACCSC cited two particular grounds[6] for the Commission's denial of the Application:

(1)     The Commission determined that PMTC failed to demonstrate that the school ensures the continuity of management and administrative capacity through the reasonable retention of management and administrative staff *(Section I (A)(4), Substantive Standards, Standards of Accreditation).*

---

[6] In addition to the two cited grounds, the March 7th Denial Letter provided two detailed examples where the management instability directly and negatively impacted school operations:  the school's ineffective Learning Resource System ("LRS") and the incomplete Faculty Qualifications Verification program.  For additional details regarding these two issues, see Ex. 23, at 6-10.

(2)     The Commission determined that PMTC failed to demonstrate that it maintains full-time on-site supervision by an individual or team that has the demonstrated ability to lead and manage the institution *(Section I (A)(1), Substantive Standards, Standards of Accreditation).*

To say that the management of Professional Massage was unstable between 2008 and 2012 is an understatement.  Professional Massage had a "revolving door" for its management team.  Alone, this management instability justifies the ACCSC Commission's decision to terminate accreditation and is amply supported in the record.

In early 2011, Professional Massage seemed to improve itself when, after being placed on probation in December 2010, it recruited April Durnell and Rebecca Cox.  Both individuals have deep experience in proprietary school operations and administration, including compliance with accreditation bodies.   During the 2nd Site Visit in June 2011 and in its Response to the 2nd Team Summary Report, Professional Massage highlighted and emphasized both Rebecca Cox and April Durnell as the answer to previous management problems.  But by December 2011, Juliet Mee had fired both Ms. Cox and Ms. Durnell, while Jessica Bell had resigned six months earlier.

This management turnover fit a continuing pattern at Professional Massage.  Previously, Juliet Mee hired and fired two other school administrators –Susan Hoescht and Veronica Moody– during 2010.  And before them, Juliet Mee had fired the entire faculty and staff.  Even her brother, Jeremiah Mee, stayed only a short time at Professional Massage.

After the Cox/Durnell episode, only Juliet Mee remained of the Management Team in 2012 even though the Team Summary Report from the August 2010 Site Visit observed that she was not qualified to administer a school alone.  The Commissioners also had before them the record that showed:

- *Financial Responsibility Failings in Title IV Programs***.** The school had become a perennial problem child for the Department of Education's Title IV program;

**ACCSC'S Summary Judgment Memorandum – Page 32 of 45**

the Department found serious, ongoing violations of Regulations in 2008, 2009 and 2010, and imposed sanctions of Heightened Cash Monitor/Level 1 and later changed to Heightened Cash Monitoring/Level 2.

- *Dire Financial Health at Professional Massage.* The school's outside accountants identified concerns "that raised substantial doubt about PMTC's ability to continue as a going concern."  During this continuing financial crisis, Juliet Mee, and school's Owner/Director, withdrew significant cash from the school as personal loans to her and had the school advance more than $135,000 to separate businesses owned by her.

Finally, after reviewing the Beatty and Mayhugh resumes, the Commission found that they did not have adequate experience to fill the newly vacant positions at Professional Massage. Professional Massage may disagree, but the Commission's determination is due great deference.

   2)  Professional Massage Never Sought a Waiver of the Requirement to <u>Demonstrate Stability in Management and Finances</u>.

The second claim by Professional Massage (made in ¶¶ 88-94 of the Amended Complaint) contends that ACCSC should have waived or "balanced" the financial responsibility requirement of the *Standards* in light of Professional Massage's supposedly-superior graduate employment rates.  But this argument ignores the critical fact that the management and financial stability standards are *mandatory* – as are all *Standards* – and are not balanced against other factors.  *See, e.g.*, Ex. #2 *(Standards)* Ch. 1, Sec. IX(E), at 55.

Under the *Standards*, Professional Massage could have sought a waiver from ACCSC of the management and financial stability standards.  *Id.*  Requests for waiver must be in writing, submitted on a form publically available on ACCSC's website, and are only granted in exceptional circumstances.  *Id.*  It is undisputed, however, that Professional Massage *never sought* a waiver from ACCSC.  Because of this failure, Professional Massage should not be allowed to raise a new argument regarding the "balancing" of the Management/Administrative standard that was not

previously raised before the ACCSC Commission.  The U.S. Supreme Court has routinely

affirmed this bedrock principle of administrative law:

> [A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks and citations omitted).  *See*

*also Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it

is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised

before the administrative agency involved.").

Thus, the Substantive Standards are mandatory and Professional Massage never previously

raised the claims in ¶¶ 88-94 of the Amended Complaint with ACCSC.  As such, ACCSC is

entitled to summary judgment on those claims.

3) The Claim Alleging that the ACCSC Staff Improperly Influenced
   the Commissioners' Vote is Shredded by the Evidence.

In the Amended Complaint, Professional Massage claims that the ACCSC staff, and not

the Commissioners, was responsible for the denial of the Application.  Professional Massage,

however, can produce no evidence that any of the ACCSC Commissioners at the November 2011

Commission meeting (where Professional Massage's probation was reinstated) or the February

2012 Commission meeting (where Professional Massage's Application was finally denied) had

any reason for either bias or prejudice against Professional Massage.  In fact, the affirmative

deposition testimony of Commissioner Kristi Mollis clearly state that there was no reason for bias

or prejudice against Professional Massage.  Ms. Mollis has never met Juliet Mee or anyone else

from Professional Massage.  This unrebutted testimony indicates that the Commission fully and fairly considered Professional Massage's application and history before denying accreditation.

Because Professional Massage has no evidence of improper conduct by ACCSC Commissioners (the people who actually make the decisions about accreditation), the school points an accusatory finger at ACCSC staff members.  According to the Amended Complaint, it was 3 or 4 members of ACCSC's staff members who plotted against Professional Massage.  *See* Amended Complaint, ¶¶ 105-108.  Professional Massage claims that this bias is reflected in certain emails exchanged amongst ACCSC staff members (but not between staff members and commissioners).  The entire record shreds this claim.

First, the testimony of two Commissioners is that no ACCSC staff member improperly influenced or even attempted to influence the Commission's decision to deny Professional Massage's accreditation.  Professional Massage has no evidence to the contrary.  Ms. Mollis, a Commissioner, testified that the March 7, 2012 Decision Letter accurately reflected the decision of the Commission.

Second, during the February 2012 meeting, the ACCSC Commissioners were faced with extensive and substantial evidence that Professional Massage's management and fiscal house was in shambles.  *See, e.g.*, Section IV(A)(1) above.  This substantial evidence clearly provides a reasonable basis for the ACCSC Commission to terminate Professional Massage's accreditation, especially after the school failed to correct its deficiencies after a two-year remedial process.

Third, the ACCSC staff emails relied upon by Professional Massage are hardly as nefarious as Professional Massage would have the Court believe.  This is evident from simply reading the

emails themselves free of any characterization provided by Professional Massage.[7]  *See* Section III(G) above, ¶¶ 76-79.  Several of these emails are slightly humorous, especially the "Send More Fudge" email from Chris Lambert.  *See id.* above, ¶¶ 78-79.  Instead of bad faith or improper bias, these emails reflect perfectly natural, human frustrations with Ms. Mee.

To put it diplomatically, Ms. Mee has a strong personality.  Her own attorney, David Harpool and of the same firm as Plaintiff's lead counsel, said so at the Appeal Hearing: "Let's also be frank that Juliet Mee rubs some people wrong."  Mr. Harpool then went on acknowledge that Ms. Mee could be difficult to work for.  Despite the careful wording of a lawyer, the message that Mr. Harpool was delivering is clear.  Multiple former Professional Massage employees—including April Durnell, Rebecca Cox, Jessica Bell, and Jeremy Beatty—told of their exasperating and unpleasant experiences with Juliet Mee.

In this context, the ACCSC staff emails simply confirm what Mr. Harpool and former Professional Staff employees already knew: Juliet Mee could be long-winded and difficult to work with.  No reasonable fact-finder, after fairly reviewing these staff emails, could conclude that they demonstrate malicious, dark-hearted bias sufficient to support a finding of a due process violation or an award of punitive damages.  Further, there is no evidence that any ACCSC Commissioner saw these emails exchanged between staff—Professional Massage's due process claim must fail.

**B.   The Count 1 Procedure Claims Fail**

Count 1 of the Amended Complaint also alleges two "procedural" claims:  (1) ACCSC exceeded a time-limit in its consideration of Professional Massage's Application, and (2) the

---

[7] In previous filings before Judge Davis, Professional Massage has provocatively referred to these as the "Bad Faith E-mails."  *See* Professional Massage's Memorandum in Support of Spoliation Motion, at 22 (ECF No. 127).  A fair observer of these e-mails will quickly see through such exaggerated references.

Commissioners did not consider all evidence, specifically the now-infamous "Two Binders."

Both claims fail for legal reasons.

   1) <u>Professional Massage Misreads the Department of Education Time-Limit Regulation</u>

       In the Count 1 time-limit claim (made in ¶¶ 102-103 of the Amended Complaint),

Professional Massage misreads the Department of Education regulation found at 34 C.F.R.

§602.20(a)(2)(i).  The regulation provides:

> (a)  If the agency's review of an institution or program under any standard
>       indicates that the institution is not in compliance with the standard, the
>       agency must –
>   (1)   Immediately initiate adverse action against the institution or program; or
>   (2)   Require the institution or program to take appropriate action to bring itself
>         into compliance with the agency's standards within a time period that must
>         not exceed—
>       …
>       (i) Twelve months, if the program, or the longest program offered by the
>           institution, is less than one year in length;
>     . . .
>   (b)  If the institution or program does not bring itself into compliance within the
>         specified period, the agency must take immediate adverse action unless the
>         agency, for good cause, extends the period for achieving compliance.

       Professional Massage submitted its application for reaccreditation in January 2010.  As part

of the reaccreditation process, the school requested several extensions to file their response to

various items.  *See* Section III above, ¶¶ 34,56.

       Further, Professional Massage mistakenly reads this regulation to require that an entire

accreditation process must be completed within twelve months.  That is not accurate.  Rather, this

regulation sets an outer, maximum time-limit for a school to bring itself into compliance with a

*specific action* of an agency (such as a Probation Order or a Show-Cause Order).  Thus, there was

no violation of 34 C.F.R. §602.20(a)(2)(i) and ACCSC is entitled to summary judgment on this claim.[8]

   2)  Professional Massage Failed to Comply with ACCSC's Procedural Requirements
         <u>Regarding the Submission of the "Two Binders."</u>

Professional Massage claims that the "Two Binders" handed to Lisa Miles during the 2nd Site Visit should have been included in the ACCSC official record and considered by the Commission. Ex. # 60 (PMTC's Response to Interrogatory #7). The "Two Binders" claim should be cast aside on the law and the alleged facts.

ACCSC's *Standards* require formal submissions to be made on computer CD or flash drive and delivered to ACCSC's office in Arlington, Virginia. Ex. #2 (*Standards*) Section I (E). This rule is designed to eliminate any uncertainty regarding what is – and what is not – a submission on behalf of a school. Both April Durnell and Juliet Mee were keenly aware of this rule.

April Durnell prepared the binders in advance of ACCSC's Site Visit to the school in June 2011. According to Ms. Durnell, the binders were not intended to be included in any official record when provided to the visiting staff and that some of the documents contained in the binders were part of the formal submission made by Professional Massage. Further, Ms. Mee testified that "[t]he binders were not a submission." *See* Section III(C)(4), ¶ 51.

ACCSC's submission procedures are clearly set forth in the *Standards* and cover letter to the Team Summary Reports, and were known to Professional Massage. Simply handing two full binders to a member of a Site Visit team does not qualify as a submission to the ACCSC official record. More importantly, Ms. Durnell confirmed that portions of the materials in the two binders

---

[8] Even if there was a violation of 34 C.F.R. §602.20(a)(2)(i), it is difficult to see how Professional Massage was damaged by a longer accreditation process. The alternative would have meant terminating the school's accreditation a year earlier, and during that extra year of review, the school profited from a flow of federal loans to its students.

were included in a subsequent submission (this time, through the correct procedure). *See* Section III above, ¶51. The Supreme Court reminds us that a party must comply with an agency's procedural requirements in order to preserve an objection: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings." *Woodford*, 548 U.S. at 90. The "Two Binders" do not qualify as a submission to ACCSC official record. As such, ACCSC is entitled to summary judgment on this claim.

### C.  The "Ackerman Claims" Fail.

Professional Massage's Amended Complaint seemingly blames the negative assessments of its management/administrative capabilities on Michael Ackerman's participation on the *first* ACCSC team site in August 2010. Mr. Ackerman was a volunteer from an ACCSC member school who served on the team.

Professional Massage first alleges that Michael Ackerman was unfit to serve on a visiting team because he allegedly was the director of a college campus owned and operated by ATI Enterprises, Inc. The allegation springs from the GAO investigation into some of ATI's campuses. The investigation was first revealed during Senate hearings on August 4, 2010.

This claim fails, however, because Mr. Ackerman was *not* the director of any campus, ATI-affiliated or otherwise. Mr. Ackerman's deposition testimony is clear on this point and is not contradicted by any evidence from Professional Massage. Mr. Ackerman's unrebutted testimony was that he worked in the company's corporate offices, and that he was not the director of any ATI school. *See* Section III above, ¶ 70. Professional Massage has no evidence that Mr. Ackerman himself has ever been the subject of any investigation of wrongdoing.

Professional Massage next alleges that Mr. Ackerman should have been dismissed as a team member prior to the August 9-10, 2010 Site Visit.  *See* Amended Complaint, Counts 2[9] and 3. Under the *Standards*, a school is advised of the team members several weeks before the Site Visit. A school can object to an individual's participation.  ACCSC advised Professional Massage in advance of the visit that Mr. Ackerman would be on the team.  Mr. Ackerman was then identified to the school as employed by ATI.   Professional Massage made no objection under the *Standards* to Mr. Ackerman's participation.

Given the opportunity to reject Mr. Ackerman prior to the Site Visit, Professional Massage should not be permitted to argue later about his being part of the visiting team.   Ms. Mee had access to the Senate hearing information, and if troubled by an ATI employee being on the listing team, she could have objected.  But she did not.

Additionally, Professional Massage could have submitted a formal complaint to ACCSC regarding Mr. Ackerman *after* the August 2010 site visit or it could have protested in its Response to the 1st Team Summary Report.  The *Standards of Accreditation* specifically provide for such a complaint, but Professional Massage never submitted any formal complaint during the extended accreditation process.  Even more important, Professional Massage did not identify Michael Ackerman's participation in its Grounds for Appeal.

Once again, Professional Massage attempts to raise a new argument before this Court that was never raised before the accreditation agency.  "[T]he party must have raised the allegation of bias before the accrediting body's appeal panel in order for the allegation of bias to be considered

---

[9] Count 2 claims that the *Standards of Accreditation* are a contract between ACCSC and Professional Massage.  The Seventh Circuit has already rejected the same argument and held that accreditation standards do not form a contract between an agency and a school.  *Chicago School of Auto. Transmission, Inc.*, 44 F.3d at 449.

by the Court." *Found. for Interior Design Educ. Research v. Savannah College of Art & Design*, 39 F.Supp.2d 889, 897 (W.D. Mich. 1998), *aff'd* 244 F.3d 521 (6th Cir. 2001).  Such efforts should be rejected categorically by this Court.  Further, even if Mr. Ackerman's involvement was improper in some way, the most reasonable remedy would be to order a second site visit by a team that did not involve Mr. Ackerman.  That, in fact, did happen when an ACCSC team visited Professional Massage in June 2011.

In the Amended Complaint, Professional Massage cites to the *Code of Conduct* agreement between ACCSC and individuals who volunteer for team site visits.  Professional Massage's argument must fail for legal reasons, primarily because it is not a party to the *Code of Conduct* agreements.   As such, it has no rights to enforce under any particular *Code of Conduct* agreement.

### D.  The Tortious Interference Claims Fail because Professional Massage Cannot Prove "Improper Means" by ACCSC.

Counts 4, 5, and 6 of the Amended Complaint fail because Professional Massage has not, and cannot, prove that ACCSC used "improper means" in rejecting the school's reaccreditation.

The tortious interference claims in Counts 4, 5, and 6 should be decided under Missouri law.[10]  Under Missouri case law, tortious interference requires the plaintiff to adduce evidence of:

> Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages.

*See, e.g.*, *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. 1993); *Stehno v. Sprint Spectrum, L.P.,* 186 S.W.3d 247, 250 (Mo. 2006).

---

[10] Under Virginia's choice of law rules, the law of the place of the supposed wrong governs tort actions filed in this court.  *See Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). "The place of the wrong or injury is place where the injury was suffered, not where the tortious act took place."  *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F.Supp.2d 932, 937 (E.D. Va. 1998).

Missouri law requires that a plaintiff who alleges tortious interference must prove a negative. That is, he must prove by substantial evidence the "absence of justification." Absence of justification is the absence of any legal right on the part of the defendant to take the actions about which a plaintiff complains. *SSM Health Care, Inc. v. Deen,* 890 S.W.2d 343, 346 (Mo. App. E.D.1994). A defendant with a legitimate interest in a business expectancy has a legal right to interfere, for the purpose of protecting his own economic interest, so long as he does not employ improper means. "If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Nazeri,* 860 S.W.2d at 317.

"Improper means" has been described by the Missouri Supreme Court as "those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Stehno*, 186 S.W.3d at 252. The Missouri high court also stated that "satisfying the absence of justification element requires a showing that the defendant interfered with the business expectancy for personal, as opposed to corporate interests." *Id*. at 253 (internal citations omitted).

In this case, ACCSC was justified in denying Professional Massage's application for reaccreditation because ACCSC clearly has a legitimate interest in enforcing its *Standards of Accreditation* – in essence, doing what ACCSC was meant to do. Because ACCSC was justified in acting on an application for reaccreditation, the Court's analysis then moves to whether the Professional Massage offers any evidence of "improper means."

Professional Massage has no evidence that the ACCSC Commission acted with "improper means" when they voted, 12-0, to deny the school's application for reaccreditation. There is no evidence that any Commissioner employed means that "are independently wrongful, such as

threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.* at 252. There is no evidence that any person, including ACCSC staff, used "improper means" to influence any Commissioner.

Because Professional Massage cannot make this elemental showing, ACCSC is entitled to summary judgment on Counts 4, 5, and 6 of the Amended Complaint.

## V.     CONCLUSION

Professional Massage carries a great burden that it cannot meet. The decision of the ACCSC Commission is entitled to "great deference," and this Court's review of that decision is even more limited than a review of a governmental agency decision. As long as "substantial evidence" exists supporting the Commission's decision, then ACCSC is entitled to summary judgment on all claims in Professional Massage's Amended Complaint.

Here, substantial evidence clearly documents Professional Massage's management and financial troubles. The school was given two years to put its house in order, but that challenge proved too formidable. After Professional Massage lost the experienced guidance of April Durnell and Rebecca Cox in December 2011(and following the loss of long-time Financial Director, Jessica Bell, in July 2011), the ACCSC Commission acted reasonably and with justification in denying the school's application for reaccreditation.

The role of this Court is not to conduct a *de novo* review of the Commission's decision. Rather, its duty is to ensure that the Commission's decision is rational and supported by substantial evidence. That threshold has clearly been met in this case.

Respectfully submitted,

**ACCREDITATION ALLIANCE OF CAREER
SCHOOLS AND COLLEGES**

**By Counsel**

_____/ss/ James S. Kurz_____

James S. Kurz (VSB #16610)
**REDMON PEYTON & BRASWELL  LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph:  (703) 684-2000 ext. 12
Fax:  (703) 684-5109
JKurz@RPB-law.com

Robert J. Martinez (*pro hac vice*)
**WILLIAMS & JENSEN PLLC**
701 8th St., N.W., Fifth Floor
Washington, DC  20001
Ph:  (202) 659-8201
JRJMartinez@wms-jen.com

Daniel D. Mauler (VSB #73190)
**REDMON PEYTON & BRASWELL  LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph:  (703) 684-2000 ext. 16
**DMauler@RPB-law.com**

Rebecca C. Larson (VSB #81455)
**REDMON PEYTON & BRASWELL LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph: (703) 684-2000 ext. 34
**Rebecca.Larson@RPB-law.com**

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on April 26, 2013, I served the foregoing by electronic filing upon the

following counsel of record:

Andrew Felice (VSB No. 26277)
Maureen E. Carr (VSB No. 72802)
**REES BROOME, PC**
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182
Telephone: (703) 790-1911
Facsimile: (703) 848-2530
E-mail: afelice@reesbroome.com
E-mail: mcarr@reesbroome.com

Ronald Holt (*pro hac vice*)
Matthew Hoppock (*pro hac vice*)
**DUNN & DAVISON LLC**
1100 Walnut Street, Suite 2900
Kansas City, MO  64106
Telephone:  816-292-7600
Fax 816-292-7601
E-mail: rholt@dunndavison.com
E-mail: mhoppook@dunndavison.com

      /ss/ James S. Kurz     
James S. Kurz (VSB #16610)
**REDMON PEYTON & BRASWELL  LLP**
510 King Street, Suite 301
Alexandria, VA  22314
Ph:   (703) 684-2000 ext. 12
Fax:  (703) 684-5109
JKurz@RPB-law.com

**ACCSC'S Summary Judgment Memorandum – Page 45 of 45**